USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___6/8/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA BUNTEN ET AL,

                              Plaintiffs,

              -against-

JOSEPH DONAT ET AL,

                              Defendants.

7:21 CV 4588 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Maritza Wilson ("Wilson") and five other employees of Defendant City of Newburgh (the "City") allege employment discrimination claims pursuant to 42 U.S.C. § 1983. (Complaint, ECF No. 1.) Following discovery, Defendants moved for summary judgment, which this Court granted with respect to all Plaintiffs except Wilson.[1] *See Bunten v. Donat,* 2024 WL 1640054 (S.D.N.Y. Apr. 16, 2024). Defendant Joseph Donat ("Donat") then filed an interlocutory appeal before the Second Circuit, which ruled by Summary Order that Wilson had failed to establish a *prima facie* case of gender discrimination pursuant to the Equal Protection Clause. *See Brown v. Donat*, No. 24-1344-CV, 2025 WL 1430572 (2d Cir. May 19, 2025). After entry of the Mandate in the District Court, the City requested that Wilson stipulate to the voluntary discontinuance of her claim against the City. When she declined to do so, the City moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 83.) For the following reasons, Defendants' motion is GRANTED.

---

[1] In opposition to summary judgment, Plaintiffs voluntarily dismissed with prejudice any claims against Defendant George Garrison. *See Bunten,* 2024 WL 1640054, at *1 n.1.

1

**FACTUAL BACKGROUND**

The Court assumes the parties' familiarity with the underlying facts and the procedural history of the case. The following facts are drawn from the Complaint, together with the Opinion and Order and the Summary Order issued by this Court and the Second Circuit, respectively.

Wilson and five other City employees commenced this action pursuant to 42 U.S.C. § 1983 by filing a Complaint wherein each alleged that various adverse employment actions had been taken against them on the basis of their race, gender and/or national origin in violation of the Fourteenth Amendment's Equal Protection Clause. (Complaint, ECF No. 1.) Wilson alleged that, in 2021, she was bypassed for a promotion to Recreation Director based upon her gender. (*Id.*, ¶ 107.)

Wilson began working for the City's Department of Parks and Recreation as a bilingual clerk in 1984. *Brown*, 2025 WL 1430572, at *1. Beginning in 2007, and continuing until 2021, the City Manager periodically asked Wilson to perform the duties of Recreation Director when the position became vacant. (*Id.*) After each stint as interim director, Wilson reverted to her bilingual clerk position. (*Id.*) Although Wilson expressed interest in a permanent appointment to Recreation Director, the City's Civil Service Commissioner advised her in 2007 that she was ineligible for the promotion because she did not have a college degree. (*Id.*) In 2015, the City's Civil Service Commission officially revised the minimum qualifications for the Recreation Director role, making a college degree a mandatory requirement. (*Id.*)

In September 2020, Wilson emailed Donat, then the City Manager, and Michelle Kelson, the City's Corporate Counsel, to formally inquire about applying for the Recreation Director position. (*Id.* at 2.) Wilson acknowledged that although her lack of a college degree prevented her from applying for the recently vacated director position, she believed that her years of experience

within the City's Parks and Recreation, including as interim director, were equivalent to a college degree and qualified her for the role. (*Id.*) In her email, Wilson also stated that, in a May 15, 2020, conversation, Donat informed her that the City would hold a conference prior to the position's posting to revise the job qualifications and remove the college degree requirement, such that Wilson could apply for the role. (*Id.*) Wilson alleges that, several months later, in August 2020, Donat relayed to her the City Council's desire to hire a "younger male" for the Recreation Director position. (*Id.*)

In December 2020, the City uploaded a job posting for the position of Recreation Director that included, *inter alia*, the minimum qualification that the applicant have a college degree. (*Id.*) Despite expressing interest in the role, Wilson did not formally apply for it. (*Id.*) In April 2021, Donat appointed an African-American male with a college degree, Sam Sutton, to the position. (*Id.*)

**PROCEDURAL HISTORY**

Wilson commenced this action on May 21, 2021 with the filing of the Complaint wherein she asserts a single cause of action alleging that "[b]y intentionally failing to promote [her] on the basis of her gender, defendants Donat and the City of Newburgh denied her equal protection of the laws in violation of the Fourteenth Amendment as made actionable by and through 42 U.S.C. section 1983." (Complaint, ¶ 107).

Following discovery, Defendants moved for summary judgment. By Opinion and Order entered on April 16, 2024, this Court granted the motion with respect to all Plaintiffs except Wilson. *See Bunten*, 2024 WL 1640054, at *7–14. Wilson's gender discrimination claim survived dismissal based upon this Court's determination that she had established a *prima facie* case pursuant to the *McDonnell Douglas* standard and presented enough evidence to create an issue of

fact. *Id.* at \*12–13. Donat appealed from that portion of the Opinion and Order that denied his motion for summary judgment based upon qualified immunity. By Summary Order dated May 19, 2025, the Second Circuit ruled that Wilson had failed to establish a *prima facie* case of gender discrimination pursuant to the Equal Protection Clause. *See Brown*, 2025 WL 1430572, at \*3–4.

After entry of the Mandate in the District Court, the City requested that Wilson stipulate to the voluntary discontinuance of her claim against the City. When she declined to do so, the City filed the instant motion for a judgment on the pleadings.

<b>LEGAL STANDARDS</b>

**I.    Rule 12(c) Judgment on the Pleadings**

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *see also* Fed. R. Civ. P. 12(b)(6).

On a motion to dismiss under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. However, the Court is "not bound to accept as true a legal conclusion couched as a factual

allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). It is not necessary for the complaint to assert "detailed factual allegations," but it must allege "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Id.* at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II.      42 U.S.C. § 1983 Claims

Wilson brings this claim pursuant to 42 U.S.C. § 1983. Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

Wilson alleges that Donat and the City failed to promote her because of her gender thereby denying her equal protection of the laws in violation of the Fourteenth Amendment. (Complaint, ¶ 107.) Because the Second Circuit addressed Wilson's claim against Donat, the remaining question before this Court is whether Wilson has sufficiently pled a claim against the City.

### I.    Claim Against Donat

In its Summary Order, the Second Circuit reversed this Court's ruling and held that Wilson failed to establish a *prima facie* case of gender discrimination under the Equal Protection Clause. Specifically, the court concluded that Donat could not have been personally involved in any alleged constitutional violation because he lacked authority to alter the college-degree requirement for the Recreation Director position; that authority rested exclusively with the Civil Service Commission. *Brown v. Donat*, 2025 WL 1430572, at *3. The Second Circuit explained that it was undisputed that "Wilson did not meet the minimum qualifications for the position she sought" because "[b]y her own admission, Wilson does not possess a college degree, which was a mandatory requirement for the Recreation Director position as set by the Newburgh Civil Service Commission." *Id.* Thus, it was therefore "immaterial" that Wilson had performed the duties of the position for years as Interim Director and that Donat had allegedly promised that the qualifications would be modified so that she could apply. *Id.* As the court explained:

> Donat lacked the authority to unilaterally amend the qualifications for the Recreation Director position.... [T]he ultimate decision on whether to revise the minimum job criteria rested exclusively with the Newburgh Civil Service Commission, and there is no evidence that the Commission, which is not a party to this lawsuit, imposed the college degree requirement for the Recreation Director position (which had been a requirement since at least 2015), or refused to alter it, because of discriminatory animus.

*Id.*

The Second Circuit also rejected Wilson's contention that Donat's alleged statement that "the city council wanted a younger male for the job" constituted direct evidence of discrimination. The court reasoned that Donat "was not the decisionmaker regarding any potential changes to the job requirements" and merely conveyed his belief regarding the City Council's intent "without providing a basis for that conclusion." *Id.* at \*4. Accordingly, the Second Circuit concluded:

> [E]ven construing the evidence most favorably to Wilson, she has failed to demonstrate a *prima facie* case of gender discrimination against Donat because Wilson did not meet the required qualifications for the position, and Donat was neither personally involved in setting those qualifications nor capable of hiring Wilson in contravention of them.

*Id.*

## II.    *Monell* Claim Against the City

Under *Monell*, "[i]n order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dept. of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 690–91 (1978)). Thus, a municipality, such as the City of Newburgh, may be sued under Section 1983 only "when execution of [the] government's policy or custom…inflicts the injury." *Monell*, 436 U.S. at 694. Therefore, any Section 1983 claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following: "(1) a formal policy officially adopted by the municipality; (2) actions taken or decisions made by municipal officials with final policymaking authority that caused the alleged deprivation; (3) a practice so persistent and widespread that it constitutes a custom or usage with the force of law; or (4) a failure to properly train or supervise

employees that amounts to deliberate indifference to individuals' constitutional rights." *White v. Westchester County*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

As discussed *supra*, the Second Circuit held that Wilson failed to establish a *prima facie* case of gender discrimination against Donat and remanded this action for further proceedings consistent with its Summary Order. Wilson did not assert any other claim or theory of relief as against the City. Thus, Wilson's inability to establish a *prima facie* case means that, as a threshold matter, she has not "alleged a deprivation of a constitutional right at all." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Finigan v. Marshall*, 574 F.3d 57, 61 (2d Cir. 2009). Simply, "there can be no *Monell* liability where there has not been an underlying constitutional violation;" thus, Wilson's claim against the City fails. *Dorsey v. Gannon*, No. 22-2735, 2024 WL 1338772, at *3 (2d Cir. Mar. 29, 2024).

In her opposition to the City's motion, Wilson argues that: (1) the City's motion is procedurally defective; (2) the law-of-the-case doctrine bars the City's motion; and (3) a reasonable jury could find the City liable under *Monell*. None of these arguments has merit. First, the City's motion is neither procedurally defective nor one that must be converted into a motion for summary judgment. In any event, conversion would serve no purpose because it would yield the same result. This action has already been the subject of extensive summary judgment motion practice following the completion of discovery, and there is no additional discovery—more than five years into this litigation and more than three years after the close of discovery—that could alter the dispositive fact before the Court: Wilson lacked the minimum qualifications for the Recreation Director position because she did not possess the required college degree.

8

Although this Court previously denied the City's motion for summary judgment, reasoning that Wilson's demonstrated ability to perform the duties of the position as Interim Director, coupled with Donat's alleged statement that the City wanted to fill the position with a man, could permit a reasonable jury to infer gender discrimination, the Second Circuit has since rejected that reasoning. Specifically, the Second Circuit held that "Wilson failed to demonstrate a *prima facie* case of gender discrimination against Donat because Wilson did not meet the required qualifications for the position, and Donat was neither personally involved in setting those qualifications nor capable of hiring Wilson in contravention of them." *Brown v. Donat*, 2025 WL 1430572, at \*4. Thus, there is no underlying constitutional violation for which the City could be held liable.

Further, Wilson's reliance on *Lugo v. City of Troy, New York*, 114 F.4th 80 (2d Cir. 2024), is misplaced. In *Lugo*, after the close of discovery, the plaintiffs moved for summary judgment and the city moved to dismiss the complaint for lack of standing or, alternatively, for summary judgment. The district court dismissed the complaint on standing grounds based solely on the pleadings, without considering the summary judgment record developed during discovery. On appeal, the Second Circuit held that the district court erred by resolving the standing issue on the pleadings rather than on the full evidentiary record. This case bears no procedural resemblance to *Lugo*. Here, the Court is not being asked to resolve a factual issue based solely on the pleadings while disregarding a developed evidentiary record. To the contrary, discovery closed years ago, the parties have already engaged in summary judgment motion practice, and the relevant factual record is complete. Moreover, the dispositive issue is not one that requires further factual development. The Second Circuit has already held that Wilson lacked the minimum qualifications

9

for the Recreation Director position because she did not possess the required college degree. Accordingly, unlike in *Lugo*, there is no additional evidentiary record that could alter the outcome.

Similarly, in light of the Second Circuit's decision, the law of the case doctrine does not bar the City's motion. If that were the case, the appellate process in our judicial system would be moot and appellate courts would never be able to remand cases for further proceedings consistent with their opinions. In this case, the logical outcome that follows from the Second Circuit's holding that Wilson failed to establish a *prima facie* case of discrimination is that there has been no constitutional violation of Wilson's rights and, therefore, there can be no *Monell* liability. *See Dorsey*, 2024 WL 1338772, at *3 ("[T]here can be no *Monell* liability where there has not been an underlying constitutional violation.").

Finally, Plaintiff argues that a reasonable jury could find the City liable under *Monell* because municipal liability does not depend on a finding of individual liability and because Wilson's failure to obtain the promotion resulted from the City's unconstitutional policies and practices. While it is true that municipal liability is not dependent upon a finding of individual liability, it *is* dependent upon a finding of an underlying constitutional violation. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [*v. Department of Social Services*, 436 U.S. 658 (1978)] was entirely correct"); *Lenzo v. City of New York*, No. 21-CV-306 (JMF), 2022 WL 656831, at *1 (S.D.N.Y. Mar. 4, 2022) ("The Court need not, and does not, address that [Monell] argument because Lenzo's claims fail for a more basic reason: He fails to plausibly allege any underlying constitutional violation at all"); *Case v. City of New York*, 408 F. Supp. 3d 313, 333 (S.D.N.Y. 2019) ("As the Court finds no underlying constitutional violation, it need not reach the question of causation for municipal

liability"). The Second Circuit's determination that Donat did not violate Wilson's constitutional rights does not eliminate the requirement that Plaintiff establish the existence of a constitutional violation to sustain a *Monell* claim. Plaintiff attempts to accomplish this by arguing that the City had adopted unconstitutional policies and practices but this argument is wholly unsupported by the evidentiary record. Accordingly, because there is no underlying constitutional violation, the City cannot be liable under *Monell*.

### CONCLUSION

For the foregoing reasons, the City's motion for judgment on the pleadings is GRANTED.

All other claims having been previously resolved on summary judgment, the Clerk of Court is respectfully directed to terminate the motion at ECF No. 83 and to terminate this action.

Dated: June 8, 2026
White Plains, New York

_____
NELSON S. ROMÁN
U.S. District Court Judge, S.D.N.Y.

11